FILED

2008 FEB 14  AM 8: 54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. C  CALIF.
LOS ANGELES

BY_____

1  AHILAN T. ARULANANTHAM (SBN 237841)
   NORA A. PRECIADO (SBN 239235)
2  PETER J. ELIASBERG (SBN 189110)
   ACLU FOUNDATION OF
3      SOUTHERN CALIFORNIA
   1616 Beverly Boulevard
4  Los Angeles, California 90026
   Tel: (213) 977-9500, x224
5  Fax: (213) 250-3919
   Email: aarulanantham@aclu-sc.org
6
   MARC VAN DER HOUT (SBN 80778)
7  STACY TOLCHIN (SBN 217431)
   VAN DER HOUT, BRIGAGLIANO
8      & NIGHTINGALE, LLP
   634 S. Spring Street, Suite 720
9  Los Angeles, CA 90014
   Phone: (213) 622-7450
10 Facsimile: (213) 622-7233
   Email:  ndca@vblaw.com
11
   Attorneys for Plaintiffs
12 (See next page for additional counsel)

13                UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16  NATIONAL LAWYERS GUILD;        )  CASE NO.
    and EVENCIO OLIVARES          )  CV08-01000 GW (SHx)
17  GONZALEZ, Individually and on  )
    behalf of all others similarly situated, )  EX PARTE APPLICATION FOR
18                                 )  TEMPORARY RESTRAINING
                    Plaintiffs,    )  ORDER; MEMORANDUM OF
19                                 )  POINTS AND AUTHORITIES IN
            vs.                    )  SUPPORT
20                                 )
    MICHAEL CHERTOFF, Secretary,   )
21  Department of Homeland Security; )
    JULIE L. MYERS, Assistant      )
22  Secretary, U.S. Immigration and )
    Customs Enforcement; JAMES T.  )
23  HAYES, Field Office Director, U.S. )
    Immigration and Customs        )
24  Enforcement; DINA ROMERO,      )
    JAMIE HOLT, JANET SHANKS       )
25  Officers, U.S. Immigration and )
    Customs Enforcement,           )
26                                 )
                    Defendants.    )
27  _____)

28

1

2

3  LINTON JOAQUIN (SBN 73547)
   KAREN C. TUMLIN (SBN 234691)
4  MARIELENA HINCAPIE (SBN 188191)
   NATIONAL IMMIGRATION LAW
5    CENTER
   3435 Wilshire Blvd., Suite 2850
6  Los Angeles, CA 90010
   Tel: (213) 639-3900
7  Fax: (213) 639-3911
   Email: Joaquin@nilc.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       This action involves an urgent request for the Court's protection in

2 remedying an egregious violation of the right to counsel. The government arrested

3 a number of individuals in an immigration raid last week. It now is conducting

4 interviews with those individuals. During these interviews, ICE officials are

5 attempting to elicit statements from them that it may later use to deport them. A

6 group of attorneys represents the individuals and seeks to assist them in these

7 interviews. But the government has barred the attorneys from representing them

8 in the interviews – immigration officials are literally barring attorneys at the door

9 to prevent them from representing their clients during the interviews.

10       Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local

11 Rule 65-1, Plaintiffs – an organization of attorneys and an individual scheduled

12 for an interview in the next day – hereby move this Court for a temporary

13 restraining order requiring that Defendants permit attorneys to accompany their

14 clients to the immigration interviews.

15       Plaintiffs also move for an order setting a time for a hearing on this petition

16 at the earliest practicable time. This matter is particularly urgent given that

17 Plaintiffs' processing interviews will take place in the next few days. This

18 application is based upon the Complaint for Declaratory and Injunctive Relief, the

19 Points and Authorities In Support of this Application for a Temporary Restraining

20 Order, and the declarations and exhibits in support thereof. As set forth in the

21 points and authorities provided below, the Complaint raises serious legal questions

22 – indeed, the government's conduct here is blatantly illegal – and the balance of

23 hardships tips sharply in Plaintiffs' favor. Thus, the Court should grant Plaintiffs'

24 application in order to avoid irreparable harm.

25

26                          **STATEMENT OF FACTS**

27       Over 100 residents of Los Angeles County, including Plaintiff Evencio

28 Olivares, were arrested in a raid by immigration authorities on Thursday, February

1  7, 2008, at a factory in the San Fernando Valley.  Plaintiff National Lawyers Guild
2  (NLG) is a group of attorneys who seek to represent the arrested workers.  See
3  Exhibit 5 (Declaration of Carol A. Sobel, ¶ 4) ("Sobel Decl.").  Many of those
4  arrested were released within one or two days of arrest but then ordered to report
5  for an interview with immigration officials.  The NLG, along with several other
6  attorney organizations (including counsel undersigned) have offered to provide
7  free legal assistance to those arrested in the raid, including Mr. Olivares, at these
8  processing interviews.  (Sobel Decl.¶ 4).  However, when the attorneys attempted
9  to represent their clients at the interviews over the last three days, the government
10 barred the attorneys from being present at the interviews.  See Exhibit 1
11 (Declaration of Stacy Tolchin, ¶ 4); Exhibit 2 (Declaration of Nikhil Shah, ¶¶ 8-
12 10); Exhibit 3 (Declaration of Susan Alva, ¶ 4); Exhibit 5 at ¶¶ 5-6).  Plaintiff Mr.
13 Olivares, like other people detained in the raid, desires the assistance of counsel
14 both because he seeks the reassurance afforded by counsel's presence and because
15 people already subject to interviews have reportedly been asked a number of
16 questions designed to obtain evidence to for use in deporting them. See Exhibit 1
17 at ¶ 5.

18
19                          **JURISDICTION**

20        This court has jurisdiction over this case under the general federal question
21 statute, which grants the federal courts jurisdiction to review questions of federal
22 law, including those related to agency action. 28 U.S.C. § 1331.  Where the
23 question of federal law implicates agency action, the Administrative Procedure
24 Act defines the scope of review under this jurisdictional grant.  See 5 U.S.C. § 706
25 (conferring cause of action for federal court to "hold unlawful and set aside
26 agency action, findings, and conclusions found to be . . . in excess of statutory
27 jurisdiction, authority, or limitations, or short of statutory right [or] without
28 observance of procedure required by law.").  In addition, to the extent that

4

1   Plaintiffs are detained by the federal government during the interview, jurisdiction

2   also arises under the general federal habeas statute.  28 U.S.C. § 2241(c)(1).

3

4                              **ARGUMENT**

5           Plaintiffs seek a temporary restraining order requiring Defendants to permit

6   attorneys to accompany their clients, including Mr. Olivares, to their interviews

7   for purposes of immigration processing.

8           Plaintiffs are entitled to the issuance of a temporary restraining order.  As

9   explained here, Plaintiffs meet the standard for a temporary restraining order, in

10  that they can demonstrate either (1) a combination of probable success on the

11  merits and the possibility of irreparable injury, or (2) that serious questions are

12  raised and the balance of hardships tips sharply in their favor.  Barahona-Gomez v.

13  Reno, 167 F.3d 1228, 1234 (9th Cir. 1999).  "These are not separate tests, but are

14  the ends of a continuum; the greater the relative hardship to the moving party, the

15  less probability of success must be shown."  Nat'l Ctr. for Immigrants Rights, Inc.

16  v . INS, 743 F.2d 1365, 1369 (9th Cir. 1984).  There is a strong probability —

17  indeed, a certainty — that Plaintiffs will succeed on the merits, as the government

18  has no authority to bar an attorney from accompanying his or her client to an

19  interview.  Moreover, Plaintiffs can show irreparable harm because the

20  government is attempting to use the interviews to obtain potentially damaging

21  evidence against the people arrested in the raid for future removal proceedings.

22

23  **I.      Plaintiffs Are Very Likely to Succeed on the Merits Of Their**
           **Claim.**

24

25          Plaintiffs are very likely to succeed on the merits of their claim because the

26  government's conduct here is clearly illegal.  Both the Administrative Procedure

27  Act (APA) and the governing immigration regulations make clear that the

28  government must allow attorneys to be present at these interviews.

1    Unless it has been explicitly displaced by a more specific provision, the

2    APA governs Immigration and Customs Enforcement (ICE) actions here. See 5

3    U.S.C. § 559; Castillo-Villagra v. INS, 972 F.2d 1017, 1025 (9th Cir. 1992) ("The

4    APA provides that no subsequent statute shall be deemed to modify it 'except to

5    the extent that it does so expressly.'") (citing 5 U.S.C. § 559).  Where no statutory

6    provision of the Immigration and Nationality Act (INA) displaces the APA, ICE

7    officials are bound to follow it just as would be any other agency.  Nikoi v.

8    Attorney General, 939 F.2d 1065, 1068 (9th Cir. 1991) ("Like other agencies, the

9    INS [now the ICE] must abide by the procedural dictates of the APA.");

10   Mada-Luna v. Fitzpatrick, 813 F.2d 1006, 1012 (9th Cir. 1987) (applying APA to

11   immigration agency action).

12       The APA provides that "[a] person compelled to appear in person before an

13   agency or representative thereof is entitled to be accompanied, represented, and

14   advised by counsel or, if permitted by the agency, by other qualified

15   representative."  5 U.S.C. § 555(b).  This rule unambiguously requires that an

16   attorney of the client's choosing be permitted to represent the client at an

17   interview with ICE.  See SEC v. Csapo, 533 F.2d 7, 10-11 (D.C. Cir. 1976) ("This

18   guarantee, phrased by the legislature in unequivocal terms, has been construed to

19   imply the concomitant right to the lawyer of one's choice.").  See also SEC v.

20   Whitman, 613 F. Supp. 48, 49 (D.D.C. 1985) (characterizing APA's right to

21   counsel rule as "absolute").

22       No provision of the INA displaces the APA's general rule.  In fact, the

23   agency's regulations confirm the rule requiring ICE to permit counsel's presence.

24   See 8 C.F.R. 292.5(b) ("Whenever an examination is provided for in this chapter,

25   the person involved shall have the right to be represented by an attorney or

26   representative who shall be permitted to examine or cross-examine such person. . .

27   .").

28       Finally, the government's practice of denying attorneys permission to enter

6

1  the interview room raises serious constitutional concerns. The Fifth Amendment

2  prohibits the government from barring an attorney from a compelled interview in a

3  custodial setting when the attorney is present and available to accompany the

4  interviewee.  See generally Edwards v. Arizona, 451 U.S. 477, 482 (1981) (person

5  subjected to custodial interrogation has the right to be represented by counsel).  In

6  light of the potentially-serious constitutional problem created by denying counsel

7  access in this context, any ambiguity in the statutory scheme should be resolved in

8  Plaintiffs' favor.  See, e.g., Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir.

9  2006) (courts should construe statutes so as to avoid deciding complex issues of

10  constitutional law).[1]

11  **II.    Plaintiffs Will Suffer Irreparable Harm as a Result of the
       Government's Illegal Policy, And the Balance of Hardships Tips
12      Sharply in Their Favor.**

13       Plaintiffs will suffer irreparable harm if the attorneys are not allowed to

14  accompany their clients to the interviews, and the balance of hardships tips sharply

15  in their favor.

16       Plaintiffs will suffer irreparable harm in two ways.  First, the government

17  has used these interviews to obtain information to be used against the clients in

18  their removal proceedings.  An attorney's presence is particularly important in

19  cases such as these, where the government may be seeking to use the interview to

20  obtain information to deport someone.  The Supreme Court has expressly

21  described deportation as a "harsh measure," United States v. Cardoza-Fonseca,

22  480 U.S. 421, 448 (1987), that "may result in loss of . . . all that makes life worth

23  living," Ng Fung Ho v. White, 259 U.S. 276, 284 (1922).  Deportation is

24  considered "a drastic measure and at times the equivalent of banishment or exile."

25  ――――――――――――――――――

26  [1]The government may argue that the interviewees have no Sixth
       Amendment right to counsel because the interviews are not part of criminal
       proceedings.  Whether or not this would be correct, it does nothing to undermine
27  their statutory right to counsel under the APA, their regulatory right to counsel
       under 8 C.F.R. 292.5(b), and their constitutional right to be free from coercive
28  questioning under the Fifth Amendment.

1  <u>Fong Haw Tan v. Phelan</u>, 333 U.S. 6, 10 (1948). Here, where an individual's right
2  to reside in the United States may be at stake, it should go without saying that they
3  will suffer irreparable harm if forced to enter into an interview with immigration
4  officials without the assistance of an attorney, who has literally been stopped at
5  the door.[2]

6      Second, it is axiomatic that counsel affords any individual a measure of
7  security when confronted with government power. <u>See</u> <u>Gideon v. Wainwright</u>,
8  372 U.S. 335, 345-46 (1963) ("The right to be heard would be, in many cases, of
9  little avail if it did not comprehend the right to be heard by counsel. Even the
10  intelligent and educated layman has small and sometimes no skill in the science of
11  law. . . He requires the guiding hand of counsel at every step in the proceedings
12  against him."); <u>cf.</u> <u>In re Chan</u>, 271 F. Supp. 2d 539, 543 (S.D.N.Y. 2003) (counsel
13  affords "a bulwark against intimidation."). Thus, whether or not the removal cases
14  that may be filed against the individuals at issue here are ever affected by any
15  statements they make, the trauma associated with having to face immigration
16  officers in a custodial setting without an attorney present is itself irreparable harm.

17      In contrast to the harm suffered by Plaintiffs, the government will suffer no
18  cognizable harm should the injunction be entered. As an initial matter, because
19  the government's interview policy is almost certainly illegal under controlling
20  statutory authority, it "cannot reasonably assert that it is harmed in any legally
21  cognizable sense by being enjoined from [statutory and] constitutional violations."
22  <u>Nat'l Ctr. for Immigrants Rights, Inc. v. INS</u>, 743 F.2d 1365, 1369 (9th Cir. 1984)
23  (holding that district court did not err in enjoining INS practices that probably

24

25      [2]The harm in this instance inures both to Plaintiff Olivares, who has to face
   an interview where the government will seek to obtain information to be used
   against him without the assistance of his attorney, and to Plaintiff National
26  Lawyers Guild, who will be unable to effectively represent their clients, and
   whose clients will suffer as a result of the government's policy. <u>See</u> <u>Caplin &</u>
27  <u>Drysdale, Chartered v. United States</u>, 491 U.S. 617, 623 n.3 (1989) (attorneys
   suffered injury and had standing to challenge law that harmed their clients'
28  property interests).

1  violated immigrant plaintiffs' rights). Moreover, the government cannot contend
2  that attorneys will delay or otherwise interfere with the proceedings in any way.
3  The attorneys' presence in the interview is intended to prevent government
4  coercion and to protect their clients' rights. The only meaningful harm for the
5  government is that it is less able to pressure the interviewees into making
6  statements that may be detrimental to their immigration cases. Under these
7  circumstances, the government cannot show that it suffers cognizable irreparable
8  harm.

9  **CONCLUSION**

10      For all of the foregoing reasons, Plaintiffs request that the Court grant
11  preliminary injunctive relief to stop the government's on-going illegal activity.
12  Specifically, Plaintiffs request that the Court enter an order requiring the
13  government to allow attorneys to attend the interviews with their clients.
14  Alternatively, the Court should order that the government postpone all interviews
15  until the Court has been afforded the opportunity to resolve this case, and that it
16  bar the government from taking any adverse action against the interviewees as a
17  result of the Court's order.

18      Counsel for Plaintiffs have provided notice to government counsel of this
19  Ex Parte Application. See Exhibit 4 (Declaration of Ahilan T. Arulanantham, ¶¶
20  3-4).

21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1      WHEREFORE, Plaintiffs respectfully request that this Court grant this

2   request for a temporary restraining order in accordance with the attached proposed

3   order, pending a decision on the Complaint for Declaratory and Injunctive Relief.

4

5   Dated: February _14_, 2008          Respectfully submitted,

6                                       AHILAN T. ARULANANTHAM
                                        NORA A. PRECIADO
7                                       ACLU FOUNDATION OF
                                           SOUTHERN CALIFORNIA
8
                                   By:
9                                       Ahilan T. Arulanantham
                                        Attorney for Plaintiffs
10

11

12                                      MARC VAN DER HOUT
                                        STACY TOLCHIN
                                        VAN DER HOUT, BRIGAGLIANO
13                                         & NIGHTINGALE, LLP

14                                      LINTON JOAQUIN
                                        MARIELENA HINCAPIE
15                                      KAREN C. TUMLIN
                                        NATIONAL IMMIGRATION LAW CENTER
16

17

18

19

20

21

22

23

24

25

26

27

28

10

RECYCLED PAPER MADE FROM 30% POST CONSUMER CONTENT

## Declaration of Susan Alva

I, Susan Alva, hereby declare:

1.    I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2.    I am an attorney licensed to practice in the state of California (SBN 109511). I am also a professor in the Migration Policy and Resource Center at Occidental College.

3.    I am part of a group of attorneys representing a number of people who were ordered by Immigration and Customs Enforcement ("ICE") to appear at designated times this week for interviews, after they were arrested at an ICE raid last week.

4.    On Tuesday, February 12, 2008, I accompanied some of my clients to their interviews at the ICE building located at 300 North Los Angeles Street. When we arrived for their scheduled interviews, the ICE supervisor at the building, Dina Romero, informed me that attorneys would not be permitted into the interviews. I argued that my clients had a right to have their attorney present during questioning, but was told that I would not be allowed in. Ms. Romero made clear that this would be ICE's position with respect to all such interviews taking place for people detained during the raid.

5.    Although Ms. Romero said that interviewees could leave the interview at any time to consult with their attorneys, it is my understanding from people who were interviewed that they were, in fact, not permitted to leave the interview to consult with their attorneys.

6.    I had two clients who went into their interviews at about 10:00 a.m.

///
///
///
///

1    one was not released from the interview until about 5:00 p.m.  The other was not

2    permitted to leave until about 8:00 p.m.

3

4        I declare under penalty of perjury of the laws of the State of California and

5    the United States that the foregoing is true and correct.  Executed this /3 day of

6    February, 2008 in Los Angeles, California.

7                                 Susan Alva

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Declaration of Ahilan T. Arulanantham

I, Ahilan T. Arulanantham, hereby declare:

1.     I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2.     I am a staff attorney at the ACLU of Southern California, where I work on immigrants' rights and national security issues.

3.     Late in the evening on February 13, 2008, I contacted Robert Lester, Assistant United States Attorney by email. I informed him that Plaintiffs intended to file an application for temporary restraining order seeking a court order requiring the government to allow attorneys to attend the interviews with their clients, or that the government postpone all interviews until the Court has been afforded the opportunity to resolve this case. I also left him a telephone message to this effect.

4.     Late in the evening on February 13, 2008, I also contacted Gjon Juncaj of the Office of Immigration Litigation by email and informed him of the same. I then also left a him a telephone message to the same effect.

5.     I contacted Robert Lester and Gjon Juncaj because I have litigated a number of immigration-related cases in the Central District over the last several years, and based on my experience with immigration litigation they are the attorneys most likely to be involved in these types of matters on behalf of the United States.


I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct. Executed this _13_ th day of February, 2008 in Los Angeles, California.

Ahilan T. Arulanantham

# Declaration of Nikhil M. Shah

I, Nikhil M. Shah, hereby declare that the following is true and correct to the best of my knowledge:

1.    I am an immigration attorney admitted to practice in the State of Wisconsin (SBN 1052626), U.S. District Court for the Western District of Wisconsin and the U.S. Court of Appeals for the 9th Circuit.

2.    I operate my own full service immigration practice at 6033 W. Century Blvd, 4th Floor, Los Angeles, CA 90045.

3.    I am a board member for the Los Angeles Chapter of the National Lawyers Guild and a member of the National Immigration Project.

4.    I am part of a group of attorneys representing a number of people who were ordered by Immigration and Customs Enforcement ("ICE") to appear at designated times this week for interviews after they were arrested at an ICE raid last week.

5.    On Wednesday February 13, 2008, I accompanied some of my clients to their interviews at the ICE building located at 300 N. Los Angeles Street, Room B-18.

6.    I had been informed by other attorneys that ICE would not allow me to attend the interview with my clients.

7.    Still, when I arrived with my clients for their scheduled interviews, I submitted Forms G-28 Notice of Entry of Appearance for both of my clients along with the notices for interview at the window in Room B-18.

8.    Ms. Janet Shanks, supervisor in charge of B-18 for the day, informed me and other attorneys that attorneys would not be allowed to be present when ICE officers interviewed our clients.

9.    My first client went inside with an ICE officer to be interviewed and I was denied access.

10.    My second client later went inside B-18 for her scheduled interview and I was not allowed access.

11.    ICE Officer Jamie Holt conducted the interview with my second client.

12.    My client was interviewed for over two hours without me, her attorney, present.

13.    After the interview, my client immediately informed me that she had told Officer Holt that she was represented by an attorney and asked if I could be present during the interview or if she could at least consult me.  Officer Holt told her that it was not necessary to have an attorney present and she continued questioning her.

14.    Troubled by this information, I immediately asked to speak with Officer Holt's supervisor, Janet Shanks.

15.    I cordially related the situation to Ms. Shanks and expressed my concern with the situation.

16.    I expressed my concern with the denial by Officer Holt to allow me to be present during the interview despite my client's request.

17.    I also expressed my concern regarding the line of questioning and manner the interview was conducted.

18.    Ms. Shanks was less than responsive to my concerns.  All Ms. Shanks did was tell me that she would talk to the officer and get back to me.  She then went back into her office.

16.    I did not hear back from Ms. Shanks after that conversation and received no reply to my complaint.   I did not have another opportunity to speak

///

///

///

2

1  with officer Shanks.  Officer Shanks did not attempt to speak with me after our

2  first and only talk.

3      I declare under penalty of perjury of the laws of the State of California and

4  the United States that the foregoing is true and correct.  Executed this _13_ day of

5  February, 2008 in Los Angeles, California.

6

7                                                    Nikhil M. Shah

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Declaration of Carol A. Sobel

I, Carol A. Sobel, hereby declare:

1.     I have personal knowledge of the facts set forth below and, if called to testify to these facts, could and would do so competently.

2.     I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California.

3.     I am the president of the Los Angeles Chapter of the National Lawyers Guild ("Guild").  The National Lawyers Guild is an association of progressive attorneys founded in 1937.  One of the primary issues with which the National Lawyers Guild has been involved for a long time period is immigration law.  The National Immigration Project of the National Lawyers Guild was formed to coordinate the work of the Guild on this issue.

3.     The National Lawyers Guild has been counsel on several prominent immigration cases, including the 21-year long fight against the government's attempts to deport a group of seven Palestinians as alleged "terrorist" supporters of the Progressive Front for the Liberation of Palestine ("PFLP").  That case finally ended with the dismissal of deportation proceedings against the remaining two Palestinians.  I served as one of the counsel for the Guild on that case, along with lead co-counsel Marc Van Der Hout.

4.     In the Los Angeles Chapter of the Guild, a considerable number of our members are engaged in immigration work, including providing representation in individual cases, conducting training for attorneys representing immigrants, and, most recently, coordinating representation for immigrants detained and facing deportation proceedings as a result of workplace raids by ICE.

5.     On Tuesday, February 12, 2008, the board of the Los Angeles Chapter of the National Lawyers Guild met and discussed the response to the raid

1    last week by ICE.  Two of our Guild chapter board members, Nikhil Shah and

2    Fatma Marouf, informed me and the other Guild board members in attendance

3    that they and other Guild lawyers were being barred from representing individuals

4    being questioned by federal immigration agents.

5        6.    Among the other Guild attorneys who have attempted in the last

6    several days to provide representation, but who have been barred by government

7    agents from doing so, are Marissa Nuncio, Susan Alva, Stacy Tolchin, Pasquale

8    Lombardo, Rosemary Esparza and Guillermo Suarez, as detailed more fully in the

9    concurrently filed declarations of some of Los Angeles Guild board members and

10   members.

11       7.    The National Lawyers Guild wants to continue to provide

12   representation to those being currently interviewed as a result of the ICE raids but

13   cannot do so unless the government's exclusion of counsel is ended.

14

15       I declare under penalty of perjury that the foregoing is true and correct.

16   Executed this 13th day of February, 2008 at Los Angeles, California.

17

18                                    _____

19                                    CAROL A. SOBEL

20

21

22

23

24

25

26

27

28

Fatma Marouf, informed me and the other Guild board members in attendance that they and other Guild lawyers were being barred from representing individuals being questioned by federal immigration agents.

6.      Among the other Guild attorneys who have attempted in the last several days to provide representation, but who have been barred by government agents from doing so, are Marissa Nuncio, Susan Alva, Stacy Tolchin, Pasquale Lombardo, Rosemary Esparza and Guillermo Suarez, as detailed more fully in the concurrently filed declarations of some of Los Angeles Guild board members and members.

7.      The National Lawyers Guild wants to continue to provide representation to those being currently interviewed as a result of the ICE raids but cannot do so unless the government's exclusion of counsel is ended.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of February, 2008 at Los Angeles, California.

CAROL A. SOBEL

1            **Declaration of Stacy Tolchin**

2        I, Stacy Tolchin, hereby declare:

3        1.      I make this declaration based on my own personal knowledge and if

4    called to testify I could and would do so competently as follows:

5        2.      I am an attorney with the firm of Van Der Hout, Brigagliano &

6    Nightingale, LLP, 634. S. Spring. St. Suite 714, Los Angeles, CA 90014.  My

7    practice is exclusively in the area of immigration law.  I am licensed to practice in

8    the state of California (SBN 217431) and am admitted to practice before the

9    District Courts of for the Central District, Eastern District, and Northern District

10   of California, the U.S. Courts of Appeals for the Ninth, Tenth, and Second

11   Circuits, and the United States Supreme Court.

12       3.      I am a member of the National Lawyers Guild and part of a group of

13   attorneys representing a number of people who were ordered by Immigration and

14   Customs Enforcement ("ICE") to appear at designated times this week for

15   interviews, after they were arrested at an ICE raid last week.

16       4.      On Tuesday, February 12, 2008, I accompanied some of my clients to

17   their interviews at ICE offices, located at 300 North Los Angeles Street, Los

18   Angeles, California at room B-122.  When we arrived for their scheduled

19   interviews, I submitted Forms G-28 Notice of Entry of Appearance for both of my

20   clients and informed the ICE officers that I wanted to be present during any ICE

21   questioning of my clients.  I was informed by ICE that my clients were being

22   interviewed in order to prepare a "Notice to Appear" (the charging document that

23   initiates removal proceedings) and that attorneys are not permitted into these

24   interviews.  I was further informed that my clients would be questioned regarding

25   information that the government would use in removal proceedings against them.

26   I argued that my clients had a right to have their attorney present during

27   questioning, but was again told that I would not be allowed in.

28       5.      I understand that ICE officers used the interview to obtain admissions

relevant, and potentially harmful, to the interviewees' immigration cases. I further understand that ICE discouraged reliance on their attorney's advice.

6.     Based on my review of the information that our team of attorneys has compiled, there are approximately twenty more clients of ours who have ICE interviews in the next several days. I intend to represent some of those individuals at their interviews.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct. Executed this _13th_ day of February, 2008 in Los Angeles, California.

Stacy Tolchin

LODGED

1  AHILAN T. ARULANANTHAM (SBN 237841)
2  NORA A. PRECIADO (SBN 239235)
   PETER J. ELIASBERG (SBN 189110)
3  ACLU FOUNDATION OF
       SOUTHERN CALIFORNIA
   1616 Beverly Boulevard
4  Los Angeles, California 90026
   Tel: (213) 977-9500, x224
5  Fax: (213) 250-3919
   Email: aarulanantham@aclu-sc.org
6
   MARC VAN DER HOUT (SBN 80778)
7  STACY TOLCHIN (SBN 217431)
   VAN DER HOUT, BRIGAGLIANO
8      & NIGHTINGALE, LLP
   634 S. Spring Street, Suite 720
9  Los Angeles, CA 90014
   Phone: (213) 622-7450
10 Facsimile: (213) 622-7233
   Email: ndca@vblaw.com
11
   Attorneys for Plaintiffs
12 (See next page for additional counsel)

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15
16 NATIONAL LAWYERS GUILD;        )  CASE NO.
   and EVENCIO OLIVARES           )
17 GONZALEZ, Individually and on  )   CV08-01000 GW(SHx)
   behalf of all others similarly situated, )
18                                )  [PROPOSED] ORDER GRANTING
                                  )  TEMPORARY RESTRAINING
                  Plaintiffs,     )  ORDER
19                                )
                                  )
20           vs.                  )
                                  )
21 MICHAEL CHERTOFF, Secretary,   )
   Department of Homeland Security; )
22 JULIE L. MYERS, Assistant      )
   Secretary, U.S. Immigration and )
23 Customs Enforcement; JAMES T.  )
   HAYES, Field Office Director, U.S. )
24 Immigration and Customs        )
   Enforcement; DINA ROMERO,      )
25 JAMIE HOLT, JANET SHANKS       )
   Officers, U.S. Immigration and )
26 Customs Enforcement,           )
                                  )
27               Defendants.      )
   _____
28

1

2

3   LINTON JOAQUIN (SBN 73547)
    KAREN C. TUMLIN (SBN 234691)
    MARIELENA HINCAPIE (SBN 188191)
4   NATIONAL IMMIGRATION LAW
      CENTER
5   3435 Wilshire Blvd., Suite 2850
    Los Angeles, CA 90010
6   Tel: (213) 639-3900
    Fax: (213) 639-3911
7   Email: Joaquin@nilc.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        The Court, having reviewed Plaintiffs' Ex Parte Application for Temporary

2    Restraining Order, Complaint for Declaratory and Injunctive Relief, declarations

3    and exhibits in support thereof, and all other filings in this case, HEREBY FINDS

4    that Petitioner warrants a temporary restraining order in accordance with the terms

5    set forth below.

6        The Court HEREBY FINDS THAT:

7        1.    This court has jurisdiction over this matter under both the

8    Administrative Procedures Act and the general federal question statute.

9        2.    Plaintiffs have satisfied the standard for obtaining a temporary

10   restraining order in that they have shown either (1) a probability of success on the

11   merits and the possibility of irreparable harm, or (2) that serious legal questions

12   are raised and the balance of hardships tips sharply in the movant's favor.  Here,

13   Plaintiffs have made both showings, and at a minimum have established that they

14   raise serious legal questions and that the balance of hardships tip sharply in their

15   favor.

16        3.    Plaintiffs have raised serious legal questions regarding the legality of

17   Defendants' actions, as both the APA and governing immigration regulations

18   clearly require the government to permit attorneys to accompany their clients into

19   these interviews.

20        4.    The balance of hardships clearly tip in Plaintiffs' favor, in that Mr.

21   Olivares and other clients of the NLG attorneys face potentially serious harm if

22   they are denied the assistance of counsel, while the government suffers no

23   prejudice from respecting the right to counsel in this context.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

THEREFORE, THE COURT HEREBY ORDERS:

1.      That Defendants cease their current policy and practice of refusing to permit attorneys to represent their clients at their immigration interviews; until such time as the Court hears and determines Plaintiffs' complaint.

IT IS SO ORDERED.

Date: _____         _____

                                   United States District Court Judge

1  AHILAN T. ARULANANTHAM (SBN 237841)
   NORA A. PRECIADO (SBN 239235)
2  PETER J. ELIASBERG (SBN 189110)
   ACLU FOUNDATION OF
3      SOUTHERN CALIFORNIA
   1616 Beverly Boulevard
4  Los Angeles, California 90026
   Tel: (213) 977-9500, x224
5  Fax: (213) 250-3919
   Email: aarulanantham@aclu-sc.org
6
   MARC VAN DER HOUT (SBN 80778)
7  STACY TOLCHIN (SBN 217431)
   VAN DER HOUT, BRIGAGLIANO
8      & NIGHTINGALE, LLP
   634 S. Spring Street, Suite 720
9  Los Angeles, CA 90014
   Phone: (213) 622-7450
10 Facsimile: (213) 622-7233
   Email: ndca@vblaw.com
11
   Attorneys for Plaintiffs
12 (See next page for additional counsel)

13

14                    UNITED STATES DISTRICT COURT

15                    CENTRAL DISTRICT OF CALIFORNIA

16  NATIONAL LAWYERS GUILD;      )   CASE NO.
    and EVENCIO OLIVARES         )   CV08-01000 GW (SHx)
17  GONZALEZ, Individually and on )
    behalf of all others similarly situated, )   [PROPOSED] ORDER TO SHOW
18                               )   CAUSE
                Plaintiffs,      )
19                               )
          vs.                    )
20                               )
    MICHAEL CHERTOFF, Secretary, )
21  Department of Homeland Security; )
    JULIE L. MYERS, Assistant    )
22  Secretary, U.S. Immigration and )
    Customs Enforcement; JAMES T. )
23  HAYES, Field Office Director, U.S. )
    Immigration and Customs      )
24  Enforcement; DINA ROMERO,    )
    JAMIE HOLT, JANET SHANKS     )
25  Officers, U.S. Immigration and )
    Customs Enforcement,         )
26                               )
                Defendants.      )
27  _____
28

1

2

3   LINTON JOAQUIN (SBN 73547)
    KAREN C. TUMLIN (SBN 234691)
    MARIELENA HINCAPIE (SBN 188191)
4   NATIONAL IMMIGRATION LAW
       CENTER
5   3435 Wilshire Blvd., Suite 2850
    Los Angeles, CA 90010
6   Tel: (213) 639-3900
    Fax: (213) 639-3911
7   Email: Joaquin@nilc.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court, having reviewed the Complaint for Declaratory and Injunctive Relief, the Ex Parte Application for Temporary Restraining Order, Plaintiffs' Points and Authorities in Support thereof, and all declarations and exhibits in support thereof, HEREBY ORDERS:

1.  That Defendants cease their current policy and practice of refusing to permit attorneys to represent their clients at their interviews;

2.  That Respondents appear before this Court on _____, at _____ a.m./p.m. to show cause why the relief sought in the Ex Parte Application for Temporary Restraining Order and the Complaint for Declaratory and Injunctive Relief should not be granted.

Dated:

_____

United States District Court Judge